### PEOPLE v. FRANZ.

1. CRIMINAL LAW—COLLECTING DEBTS.

Collection of claimed debts by making criminal charge is not a lawful method.

2. LARCENY—STATUTORY LARCENY—ADVANCE PAYMENT FOR MERCHANDISE.

Statute providing for crime of larceny by conversion may not be construed so narrowly that defendant who received money as advance payment for merchandise to be sold and delivered later thereupon became the owner of such money and could not be found guilty of such crime (Act No. 328, § 362, Pub. Acts 1931).

3. SAME—STATUTORY LARCENY—EVIDENCE.

Evidence in prosecution for larceny by conversion held, sufficient to present for jury the issue as to whether at any time defendant who had been paid a sum of money with which to buy iron for the complaining witness, instead of buying the iron with such money, did fraudulently convert it to defendant's own use (Act No. 328, § 362, Pub. Acts 1931).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] Civil liability for use of criminal process to collect a debt. 162 A.L.R. 800.

[2–8] 32 Am. Jur., Larceny, §§ 43, 47.

[6] 32 Am. Jur., Larceny, § 133.

[6] Evidence of other offenses to prove identity. 3 A.L.R. 1552; 22 A.L.R. 1019; 27 A.L.R. 358; 63 A.L.R. 608.

4. SAME—STATUTORY LARCENY—ELEMENTS OF OFFENSE—CONVERSION—DELIVERY.

> The statutory offense of larceny by conversion is neither common-law larceny nor embezzlement and has two elements (1) delivery of the property, and (2) its embezzlement, fraudulent conversion or concealment; gist of the offense being conversion, but character of delivery, whether induced by legal or wrongful means, not being an element (Act No. 328, § 362, Pub. Acts 1931).

5. SAME—STATUTORY LARCENY—ADVANCE PAYMENT FOR MERCHANDISE—CONVERSION OF PART.

> Where defendant who had been charged with larceny by conversion admitted receiving a sum of money but claimed he had spent a substantial part of it in an endeavor to procure for the complaining witness iron for which the money had been paid in advance, the conversion of any of the money by defendant to his own use would constitute a commission of the offense charged (Act No. 328, § 362, Pub. Acts 1931).

6. SAME—STATUTORY LARCENY—OTHER OFFENSES—EVIDENCE OF INTENT.

> Testimony as to offense similar to and antedating larceny by conversion charged was competent as bearing upon defendant's intent incident to offense charged (Act No. 328, § 362, Pub. Acts 1931).

7. SAME—STATUTORY LARCENY—CREDIBILITY—INTENT—QUESTION FOR JURY.

> In prosecution for larceny by conversion, evidence *held,* to have presented for consideration of jury, issues as to defendant's credibility and intent (Act No. 328, § 362, Pub. Acts 1931).

8. SAME—STATUTORY LARCENY—QUESTION FOR JURY.

> Testimony in prosecution for larceny by conversion *held,* sufficient to justify submitting question of defendant's guilt to jury (Act No. 328, § 362, Pub. Acts 1931).

Appeal from Recorder's Court of the City of Detroit; Groat (Gerald W.), J. Submitted April 16, 1948. (Docket No. 83, Calendar No. 43,995.) Decided May 18, 1948.

Norman Franz was convicted of larceny by conversion. Affirmed.

*Brashear & Brashear,* for appellant.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *James N. McNally,* Prosecuting Attorney, and *Robert N. Smiley* and *Mark Friedman,* Assistant Prosecuting Attorneys, for the people.

NORTH, J. Defendant, Norman Franz, on trial by jury in the recorder's court of the city of Detroit, was found guilty under an information which charged that in October, 1946, defendant lawfully came into possession of $4,080 which belonged to John H. Wallace, "and afterwards and while the said goods and chattels were then in his possession as aforesaid, he, the said Norman Franz,   *   *   *   the said property of the value aforesaid, feloniously and fraudulently did embezzle and convert to his own use; and so, the said Norman Franz, the property of the said John H. Wallace afore-mentioned in manner and form aforesaid, feloniously did steal, take and carry away; contrary to the form of the statute," et cetera. The trial court imposed on defendant a sentence of 2½ to 5 years in the State's prison of southern Michigan. Defendant has appealed.

The section of the Michigan penal code noted in the information reads as follows:

"Any person to whom any money, goods or other property, which may be the subject of larceny, shall have been delivered, who shall embezzle or fraudulently convert to his own use, or shall secrete with the intent to embezzle, or fraudulently use such goods, money or other property, or any part thereof, shall be deemed by so doing to have committed the crime of larceny and shall be punished as provided in the first section of this chapter." Act No. 328, § 362, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–362, Stat. Ann. § 28.594).

John H. Wallace, who was in the sheet metal and roofing business, was seriously in need of material with which to operate. For the purpose of buying iron, he contacted defendant on or about October 7, 1946. Wallace testified that he agreed to buy some iron of defendant who agreed to sell the same and, at least tentatively, it was arranged delivery should be made within 10 days after October 7, 1946, on which date Wallace gave defendant a check for $2,040 as "payment on galvanized iron." A little later defendant informed Wallace, by telephone, that he had located the iron Wallace wished to purchase, and defendant asked Wallace for another check. Thereupon Wallace mailed a second check, dated October 19, 1946, for $2,040 to defendant. The two checks were in payment of 20 tons of galvanized iron. Some two months passed and none of the purchased material was delivered to Wallace, who had called defendant's office on several occasions and finally contacted defendant, whereupon Wallace told defendant he either wanted his money or the iron. Incident to their interview defendant directed an office employee to make a check obviously for the repayment of the money defendant had received from Wallace; but upon defendant saying he could get the iron for Wallace within a few days the above mentioned check was not delivered to Wallace, who testified:

"But I felt this way about the iron, if he could get the iron, I still needed the iron bad for my business, and I told him, 'If you get the iron, I will still let the money stay here,' and he agreed to get the money again for me, and that is about the last conversation I had with him."

Thereafter Wallace was unable to contact defendant but on several occasions he did contact defendant's office. Wallace never received any of the iron,

nor was the money he had paid to defendant, or any portion thereof, returned to Wallace.

Defendant testified that at the time Wallace first visited defendant's office, the latter received a long distance telephone call from Asher Company, of New York, "that they had a quantity of steel available for immediate shipment." Thereupon, according to defendant's testimony, he asked Wallace if he would care to have defendant "go ahead and transact that deal for him." Defendant further testified that he went to New York, contacted a representative of the Asher Company and "paid $1,800 to the Asher Company in cash," but it developed later that the steel Asher Company had for sale did not "pass inspection, and it was not the gage that was required." Defendant testified that Asher Company still has the $1,800. None of the Asher Company steel was delivered to Wallace. Defendant also testified in substance that he endeavored on numerous other occasions to obtain from various sources the steel that Wallace desired, but was not able to do so.

A letter dated October 10, 1946, written by defendant to Wallace injects considerable uncertainty in this record as to the continuity of events hereinbefore recited, and also reflects a measure of incredibility upon defendant's testimony. The letter reads:

"Please be advised that we have placed your order number 1044, with our supplier, for 20 tons, 28-gage galvanized sheet, 38x96, and we anticipate delivery of this material within a reasonable period of time. Our records show that you have deposited with us sufficient funds to cover 10 tons of this material, and 10 tons still to be paid for. Please be good enough to advise us when you are notified shipment has been completed."

As bearing upon defendant's intent it was shown by the testimony of Henry Driscoll, a witness for the people, that in the latter part of January or first

part of February, 1946, he gave defendant $500 with which defendant was to purchase typewriters for Driscoll, who was a dealer in that line of merchandise. The typewriters were never delivered to Driscoll, nor was his money returned by defendant. The testimony of this witness discloses that after considerable delay and after Driscoll began to sense that the typewriters would not be delivered to him he made repeated efforts to contact defendant, but was unsuccessful with the possible exception of one occasion. Driscoll testified that when he talked to defendant about their transaction, as to defendant's reply:

"It was always rather vague. He was working on it and he was supposed to be getting something. * * * He always managed to show me a lot of letters of credit, he called them, that he had, and as soon as he could deliver that steel he was supposed to have bought, I would make a nice profit on it, although I told him I never asked for any profit."

At the close of the people's case defendant moved for a directed verdict and after conviction he moved for a new trial. Both motions were denied.

In appellant's brief the only statement of question involved is as follows:

"Where respondent is charged with larceny by conversion of a sum of money and the prosecution's own testimony clearly shows that respondent received the money from the complaining witness, as an advance payment on the sale of goods to be procured by respondent and delivered to complainant some time in the future, and that respondent attempted to fulfill his contract but was unable to do so, should respondent's motions for a directed verdict and (or) new trial be granted?"

Appellant asserts that the foregoing question should be answered in the affirmative. In this con-

nection appellant contends: "If any charge against respondent was justified by the proofs (and none was), it was a charge of obtaining money by false pretenses, and not by larceny by conversion." This contention amounts to no more than saying that the proofs do not sustain defendant's conviction of the offense charged, *i.e.,* larceny by conversion. Admittedly the proofs were insufficient to sustain a conviction of obtaining property by false pretenses; but that was not the offense charged, nor was the case tried on that theory. To some extent defendant relies upon *People* v. *Widmayer,* 265 Mich. 547; but the sole charge in that case was one of "obtaining money by false pretenses," and hence the holding therein is not applicable to the instant case. Further, as stated in one of the headnotes in the *Widmayer Case:* "Collection of claimed debts by making criminal charge is not a lawful method." But it does not appear under the record before us that any such purpose prompted prosecution in the instant case.

The sole issue on this appeal is this: Should defendant's conviction of larceny by conversion, charged under the above quoted statute, be sustained? Appellant says it should not because when Wallace paid the $4,080 to defendant Franz it was "an advance payment" for merchandise to be sold and delivered by respondent to Wallace, and, "As soon as respondent received the money, as a payment, it immediately ceased to be the property of Wallace and became the property of respondent." Continuing, appellant argues, "It is impossible for respondent to be guilty of conversion of his own property."

The quoted statute under which defendant was prosecuted cannot be rendered impotent by so narrow a construction. By the testimony the issue was presented whether at any time, as charged in the

information, defendant, instead of buying the iron for delivery to Wallace with the money paid by him to defendant, the latter did fraudulently convert it to his own use. In *People* v. *Doe, alias Meyer,* 264 Mich. 475, we said:

"The offense is neither common-law larceny nor embezzlement, but is one of the crimes provided by statute law to occupy the no-man's land surrounding the offenses against property at common law.  *  *  *

"The crime has two elements, (1) delivery of property, and (2) its embezzlement, fraudulent conversion or concealment. The *character* of the delivery, whether induced by legal or wrongful means, is not an element. The gist of the offense is the conversion."

In defendant's letter of October 10, 1946, to Wallace, defendant refers to money paid to him in these words: "Our records show *you have deposited with us* sufficient funds to cover 10 tons of this material." In testifying defendant admitted receiving $4,080 from Wallace, thus leaving for consideration and determination by the jury the other element of the offense charged—*i.e.,* embezzlement by defendant or his fraudulent conversion to his own use of money paid to him by Wallace. On this phase of the case clearly an issue of fact was presented for the jury. Defendant admitted receiving $4,080. Of this amount he testified he paid $1,800 to the Asher Company; and he also testified it "has cost me around $1,500 to locate a sufficient quantity of steel to make the deliveries. * * * Not this particular steel, but steel for Mr. Wallace and other people." These two items total $3,300. The question at once arises: What disposition did defendant make of the balance of the $4,080 received from Wallace? Obviously this balance of $780 has been by defendant converted to his own use in some manner. As to this phase of the case it is not a defense, as suggested in defend-

ant's brief, that after receiving the money from Wallace defendant made an honest effort to purchase the material for Wallace. If thereafter defendant embezzled or fraudulently converted to his own use any money paid him by Wallace, defendant committed the offense charged.

But defendant further contends:

"There was no felonious intent. The facts conclusively show that when respondent received the payment he intended to procure and deliver the merchandise, and actually endeavored to do so. Without felonious intent, there can be no larceny by conversion."

From the testimony, in part hereinbefore quoted, it plainly appears that defendant is not justified in saying "the facts conclusively show that when respondent received the payment he intended to procure and deliver the merchandise." Instead, in this respect, an issue of fact was presented. The transaction with witness Driscoll ante-dated the Wallace transaction; and the testimony relative to the Driscoll transaction was competent as bearing upon defendant's intent incident to the Wallace transaction. See *People* v. *Guise,* 262 Mich. 72, and *People* v. *McHugh,* 286 Mich. 336. In cases of this character a jury may justly conclude that "actions speak louder than words." Notwithstanding defendant's testimony in his own behalf, his credibility as well as the issue of his intent, under this record, were matters for jury determination. In the instant case, unlike the record in *People* v. *Chapman,* 305 Mich. 516, there was sufficient testimony to justify submitting to the jury the issue as to defendant's guilt of the charge in the information having been proven beyond a reasonable doubt.

Nothing appears in the record on this appeal which would justify reversal. Defendant's conviction and sentence are affirmed.

Bushnell, C. J., and Sharpe, Boyles, Reid, Dethmers, Butzel, and Carr, JJ., concurred.